E. F. HUFFMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12874.    Promulgated December 19, 1928.

*Harold McGugin, Esq.,* for the petitioner.
*C. H. Curl, Esq.,* for the respondent.

810

812

OPINION.

MORRIS: The question we are asked to determine in this proceeding, namely, whether petitioner's net income for 1921 should be increased by $21,580, the balance of his proportionate share of the partnership income as shown by its return, was presented in the case of *George I. Bumbaugh*, 10 B. T. A. 672, and the facts in support of the petitioner's contention are almost identical. The partnership return shows a net income to be accounted for by the members of $145,345.46 and the petitioner's share as cash $14,756.39 and stock $21,580. He returned the cash for the taxable year but did not report any additional amount as income from the partnership. Based on the partnership return alone, there is no question but that the petitioner was in error.

Section 218 (a) of the Revenue Act of 1921 provides:

That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year, * * *

The petitioner's distributive share of the partnership income as shown by its return was $36,336.39, all of which, under the above provision of the Act, should have been reported in his personal return.

The petitioner contends, however, that the stock, representing part of his distributive share as shown by the partnership return, was not income, because it was practically worthless on December 31, 1921. The record shows that as soon as the partnership consummated the sale of its assets, it dissolved, leaving the partners to collect the bal-

ance of the purchase price as best they could. One of the partners collected all of his proportionate share in cash in 1921, while one of the others collected $5,000 more than the remaining two. Under the contract of sale all assignments of title and evidence of transfer were placed in escrow in the Producers State Bank of Tulsa, Okla. The petitioner testified that they were full security for and worth his claim of $21,580 against the purchaser. Under the agreement of November 10, 1921, the petitioner surrendered his claim and accepted in lieu thereof 21,580 shares of the M. T. C. Company's stock, which at that time he believed to be worth its par value of $1 per share. The petitioner contends that the fair market value of the stock on December 31, 1921, was 5 cents a share, or that it had a " net " value of 60 or 70 cents a share provided 35 or 40 cents a share had been paid to " high-powered salesmen " to sell it. The valuation of 5 cents a share is based on the testimony of one of the witnesses, who, however, on cross-examination testified that on December 31, 1921, the stock was probably worth par and that his valuation of 5 cents a share testified to on direct examination was based on subsequent developments rather than the facts as they existed at that time. As a matter of fact the witness himself had acquired some of the stock at par, part of it in payment of a debt and the balance for cash. One million six hundred thousand shares of the stock were sold on the market at par and during 1921 dividends of 1 per cent per month were paid on it. There is no evidence of any sales of the stock at less than par. The issuing corporation took over valuable leases, gas wells, and pipe lines from the partnership. There is nothing to indicate that the value of those assets together with the other assets owned by it were not equal to the par value of the stock.

In connection with the petitioner's contention for a " net " value of 60 or 70 cents a share, we held in the *Bumbaugh* case, *supra*, that the expenditure of large sums of money for promotion and advertising purposes does not, in and of itself, prove that the par value of the stock received by the petitioner should be discounted 60 or 70 per cent.

In our opinion the preponderance of the evidence does not support the petitioner's contention, whether it be considered that the partnership had a debt against the purchasing corporations for the balance of the purchase price or stock of one of them, which was distributed to its members upon dissolution, nor was sufficient evidence introduced to warrant a different conclusion than that reached in our prior decision on the same transaction.

*Judgment will be entered for the respondent.*